## DETROIT TRUST CO. *v.* LANGE.

1. APPEAL AND ERROR—DEFENSES—DENIAL OF EXECUTION OF WRITTEN INSTRUMENT—ALTERATION.

In action on contract of guaranty of land contract payments, defendant's claims of alteration and denial of execution may not be considered in the Supreme Court where he did not deny execution under oath (Court Rule No. 29 [1931]).

2. GUARANTY—CONSIDERATION.

Payment received for vendor's interest in land contract is consideration for his guaranty of payments thereunder.

3. SAME—ALTERATION OF LAND CONTRACT.

Gratuitous alteration of land contract by vendor's assignee in reducing amount of monthly principal payments does not alone release vendor who guaranteed such payments.

4. Vendor and Purchaser—Notice of Forfeiture—Ambiguity.
   Notice of forfeiture of land contract which is not clear and unambiguous does not terminate contract liability.

5. Same—Rights of Guarantor of Principal Payments of Land Contract.
   Guarantor of principal and interest payments under a land contract may exercise the rights of a vendee as to payments as a measure of self-protection where serious defaults occur.

6. Evidence—Judicial Notice—Decline in Real Estate Market.
   Supreme Court takes judicial notice of decline in real estate market in Wayne county during period from 1927 to 1932.

7. Vendor and Purchaser—Guaranty of Payments—Release—Damages.
   Failure upon the part of vendor's assignee to give vendor timely notice of vendee's default in making principal and interest payments guaranteed by vendor releases latter *pro tanto* only where he shows actual damage suffered as a result of such failure.

8. Judgment—Amount—Ad Damnum Clause—Appeal and Error—Pleadings.
   Judgment should not be in excess of amount named in the *ad damnum* clause but where error is not assigned therefor the amount is not disturbed on appeal merely because of insufficiency of pleadings.

9. Damages—Guaranty of Land Contract Payments—Taxes—Insurance.
   Taxes, insurance and interest thereon, not being included in guaranty of payments under land contract, may not be recovered in action against guarantor upon default by vendee.

Appeal from Wayne; Webster (Arthur), J. Submitted January 11, 1934. (Docket No. 136, Calendar No. 37,440.) Decided June 4, 1934.

Assumpsit by Detroit Trust Company, a Michigan corporation, and another, cotrustees of the estate of Frank D. Forbush, deceased, against Anton Lange and Pauline Lange on a contract of guaranty of land contract payments. Discontinued as to de-

fendant Pauline Lange. Judgment for plaintiffs. Defendant Anton Lange appeals. Modified and remanded.

*Goodenough, Voorhies, Long & Ryan,* for plaintiffs.

*Jorgenson & Alexander,* for defendant.

BUSHNELL, J.    Anton Lange and his wife, Pauline (now deceased), sold certain property in Wayne county on land contract dated September 1, 1920, to Harry Barigian and Agnes, his wife, for $9,500, of which $1,200 was the down payment. The balance of $8,300 was to be paid "$80 or more each and every month thereafter including interest." The contract is in the usual form and provides, among other things, for payment by the vendees of taxes, assessments and insurance, but contains no time limit as to principal nor any acceleration clause. On May 1, 1925, the Langes sold their vendors' interest in the contract, together with five others not involved here, at a discount to the Detroit Land Contract Company. The balance due on principal was $6,199.32. The vendees had been quite regular in their payments up to that time, excepting that they had skipped the payments due in June, July and December of 1924, and February of 1925.

The assignment reads in part:

"We warrant that the above amounts of principal are due, and that contract purchasers or their assigns will pay same, together with interest thereon, in accordance with the terms of the contracts assigned."

On May 19, 1925, the land contract company assigned its right, title and interest to Frank D. Forbush, plaintiffs' testator. There is no record of

payments between the date of the assignment and December 4, 1926. It seems certain, however, that nothing was paid from the latter date until May 9, 1927. On June 10, 1927, plaintiffs began to accept $50 per month. On November 28th of that year $40 was accepted and thereafter monthly payments of this amount were made with some exceptions until July of 1930, when another default occurred. The vendees began again at the same rate of $40 a month in October, 1930, and continued through July of 1931. After the July entry the trust records show the notation:

"Forfeiture notice sent. Under foreclosure. Refer all payments to legal department."

No payments were made thereafter on the balance due of $4,416.88. The records of the trustees then show a charge for 1930 State and county and 1930–1931 city taxes of $246.34, and insurance premiums of $30, bringing the contract balance to $4,693.22.

The only notices of default given vendees were the alleged forfeiture notices, one dated September 17, 1930, and showing payments overdue in the sum of $240, and a similar notice dated October 2, 1931, showing overdue payments of $200. No notice of the vendees' default was given the Langes at any time, nor was any demand made upon them for payment until November 5, 1931.

Suit was commenced on the guaranty on December 29, 1931, and a judgment was entered for plaintiffs in the sum of $2,799.47 on June 16, 1933. The case seems to have been discontinued as to Pauline Lange, deceased, before trial.

Defendant alleges that the instrument of assignment was altered and rewritten; that the instrument

which he signed was not a guaranty nor was it intended to act as one. It is further insisted that there is no privity of contract between the parties; that there was no other consideration for the purchase of the contracts other than a discount of 18 per cent. charged defendant, and no promise of guaranty on his part. Defendant asserts that, if there was ever any liability on his part, he was released by a new agreement between plaintiffs and vendees which substantially varied the terms of the original contract. He also pleads lack of consent, ratification or affirmation by him of any changes in the terms of the contract. He claims to be released because of plaintiffs' failure to notify him of the various defaults.

Trial by jury was waived and the court found that the instrument as offered was duly executed by the Langes; that there was only a threat of possible forfeiture but no actual declaration of forfeiture; and that, even though notice of default was not given defendant, no damage was occasioned by lack of notice.

The record does not contain an affidavit filed with the answer denying the execution of the guaranty, as required by Court Rule No. 29 (1931). Appellant cannot now be heard in denial of its execution or on a claim of alteration. *Continental Bank* v. *Great Lakes Western Refining Corp.*, 243 Mich. 622. See, also, *Lambert* v. *Smilansky*, 246 Mich. 125; *Ensign* v. *Fogg*, 177 Mich. 317. The payment Lange received when he sold the contract was consideration for his guaranty.

Defendant's contention that the arrangement between the guarantee and the principal to accept smaller instalments of principal and interest each month materially altered the principal's obligation

to his prejudice, and that consequently he was released from his obligation as guarantor, is not sound. A mere gratuitous alteration of the principal's obligation will not release the guarantor. The alteration must be supported by a consideration and be binding on both parties. If it is not enforceable, it does not put the guarantor in any better or worse position than he was before. *In re Kelley's Estate*, 173 Mich. 492 (Ann. Cas. 1914 B, 848).

"There must be another contract submitted for the original contract, or some alteration in a point so material as in effect to make a new contract, without the surety's consent to produce that result. But when the essential features of the contract and its objects are preserved, and the parties, without objection from the surety, and without any legal constraint on themselves, mutually accommodate each other, so as better to arrive at their end, we can find no ground for the surety to complain." *Benjamin* v. *Hillard,* 23 How. 149.

No consideration having been shown for plaintiffs' acceptance of reduced instalment payments, Lange was not released by such reduction.

Appellant also claims he was released by alleged notices of forfeiture given by plaintiffs to the vendee, one dated September 17, 1930, and another dated October 2, 1931. A notice of forfeiture terminates the contract liability, *Chicago Boulevard Land Co.* v. *Apartment Garages,* 245 Mich. 448, but in that case the court also said:

"There is no claim that the notice was not sufficient nor effective."

"A declaration of forfeiture must be clear and unambiguous, conveying an unquestionable purpose to insist that the forfeiture has accrued." *Gyro, Inc.,* v. *Westbrook Lane Realty Corp.,* 261 Mich. 118.

The notices in the case at bar are not unqualified declarations of forfeiture and do not meet the standard raised by the authorities cited.

The important question presented is the effect of the failure of plaintiffs to give appellant timely notice of default. In *Palmer* v. *Schrage,* 258 Mich. 560, we held in a five-to-three opinion that the liability on the part of the guarantors of payments on a land contract continues even though the guarantee fails to give prompt notice of the vendee's default, so long as there is no showing that the guarantor was damaged by the delay in giving notice. At the next term of court in *Mortgage & Contract Co.* v. *Linenberg,* 260 Mich. 142, we again divided as before.

Defendant Lange submitted testimony as to the value of the property in 1927 and at later dates, compared with its value at the time of trial. He contends that had he known of the default, he could have paid the entire balance due in 1927 and then foreclosed and resold the property without suffering a loss, but that because of plaintiffs' delay in giving notice it is no longer possible to protect himself by such action. The court held, however, that "the fact that the property might have brought more on the market in 1927 than at the present time does not prove damage, unless the defendants had the right to resort to the property itself in case of default" and "the guarantors did not have such a right."

It is argued by appellees that, in both cases cited (*Palmer* v. *Schrage, supra,* and *Mortgage & Contract Co.* v. *Linenberg, supra*), the land contract included an acceleration clause. In the former, the guarantor had stipulated in the guaranty for the right to foreclose the contract in event of default,

and in the latter the plaintiff had declared the whole balance due and had brought action to foreclose. In the case at bar they contend that neither by his contract nor by subrogation can the guarantor obtain the right to foreclose the contract and, therefore, having no recourse to the land, proof of depreciation in its value in no way establishes damage. In short, it is claimed, as the court found, that all defendant could do is to pay the defaulted instalments and then sue the vendees.

This argument is sound as far as it goes, but could he not possibly, by assuming the rights of the vendee, under the strict letter of the latter's contract ($80 per month or more), have paid the entire balance to the plaintiffs and received a deed, and then required payment or a surrender of possession of the vendees by summary proceedings or proceedings in equity? The contract when sold was almost five years old and the property itself was worth more than the balance due. Just how soon vendees began to default is not clear from the record, as the exhibits do not detail payments from April 1, 1925, to December 4, 1926. All we know is that there was a default in 1927, another in 1930, and a final default in 1931, and that defendant Lange had no knowledge of the condition of this contract until a letter was sent him, dated November 5, 1931.

We are committed to the doctrine that a guarantor is not *per se* entitled to notice of default, although he may be released *pro tanto* if he shows actual damage suffered as a result of failure to give notice. It may not be wise to disturb this doctrine and thereby further unsettle the course of dealings in land contracts in this State. Perhaps, during our recent period of prosperity, there has been no occasion to make a critical re-examination of the question of

land contract security apart from other guaranties. The rule was first established in *Farmers & Mechanics Bank* v. *Kercheval,* 2 Mich. 504, that:

"If a demand and notice is required, upon the facts disclosed in the record, it cannot be made available as a defense, unless the defendant can also show that he has suffered loss or damage."

Under the clause calling for payments of $80 or more a month the vendees could have paid up the balance due and received a deed at any time. The guaranty was that the principal would be paid, together with interest thereon, in accordance with the terms of the contract. If the vendees had the right to pay in full, the guarantor should have been entitled to the same right under the circumstances of this case. It may be argued that the guarantor is only secondarily liable and cannot be called upon to respond before the principal has neglected to perform. Where, however, serious defaults occur the guarantor may exercise the rights of the vendee as to payments as a measure of self-protection.

There is testimony before us as to comparative values of the property from competent, disinterested witnesses, to the effect that in 1927, at the time of the first serious default, it was worth from $7,100 to $7,830, and at the time of trial in December, 1932, from $3,200 to $3,638. We would be shutting our eyes to the realities if we did not recognize that during the period when almost continuous defaults were occurring in this transaction, the real estate market was rapidly declining. Defendant testified that he would have been glad to take over the property in 1927, and that it was a banner year for real estate. This testimony was rebutted. A continuing guarantor should have the same right as his principal

as to payment, unless prevented by the language of his guaranty, where the principal debtor has fallen badly into default and shows no prospects of future regularity in payments. This is necessary in order to afford this class of guarantors some protection against the vicissitudes of rising and falling real estate markets and varying economic conditions. What happened in the instant case is a splendid illustration of this proposition. Lange should be released *pro tanto*.

The cause should be remanded for determination by the trial court of the *pro tanto* damage, based upon the difference between the fair market value on November 5, 1931, the date when notice of default was given the guarantor, and the fair market value on June 10, 1927, that being the date when payments were reduced to $50 per month.

Other questions, however, must be considered. The *ad damnum* clause of the declaration claims judgment in the amount of $1,500, and a judgment was entered for $2,799.47. According to the record, no amendment was sought by plaintiffs. We held in *Daines* v. *Tarabusi*, 250 Mich. 217, and *Thomson Spot Welder Co.* v. *Oldberg Manfg. Co.*, 256 Mich. 447, that the judgment may not be in excess of the amount named in the *ad damnum* clause. Appellees' brief explains the method of computation of the judgment as that used in the *Palmer Case*, a theory not set forth in the declaration or the proofs. The amount in excess of $1,500 is erroneous, but, as stated in *Patterson* v. *Gore*, 177 Mich. 591, such error is not jurisdictional. No appeal was taken on this question, nor is any attack made on the computation in appellant's brief. We will not on our own motion consider the amount of the judgment except as herein noted.

We must, however, call the trial court's attention to a manifest error in the judgment which is more serious than a departure from the rules of pleading and the limitations set upon recovery by such rules. In the instant case the guaranty itself is silent as to the guarantors' responsibility for defaults in taxes and insurance. In the *Palmer* decision, apparently adopted as a standard in this case, the guaranty stated that

"The attached contract * * * is guaranteed as to payments on same by the purchaser in the following manner. If the purchaser on this contract shall become in default (defendants) agree to make said payments."

This was a general guaranty of all payments necessary on the contract. Under the terms of the contract in the *Palmer Case,* it was provided that taxes and assessments paid by the vendor would become "a further lien upon the land, payable by the purchaser to the seller forthwith." The language of the guaranty in that case covered the taxes. In the case at bar there is only a guaranty of principal and interest payments. Such error in computation being apparent from the record, taxes, insurance and interest thereon should not be included in the judgment.

The cause is, therefore, remanded, the judgment vacated and the trial court directed to enter a new judgment in accordance with this opinion. Appellant may have his costs.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred.